# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CR-0166-002-CVE |
| ) | |
| VINCENT BRET WATSON, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Vacate Jury Verdict and Motion for a New Trial (Dkt. # 103). Defendant argues that he received ineffective assistance of counsel because his trial counsel, who was retained by defendant less than a week before the initially scheduled trial date, did not adequately inform defendant of the potential sentences he faced and did not adequately communicate with him about the possibility of a plea agreement. The Court held an evidentiary hearing on May 16, 2012, at which defendant presented two witnesses. The government opposes defendant's motion, but did not submit an opposition brief. Upon careful review of the motion, the record, the witnesses' testimony, and the relevant case law, it is clear that defendant was adequately informed of the potential sentences he faced if found guilty, and that all plea offers were adequately communicated to him.

### I.

Following the evidentiary hearing, the Court finds as follows: On November 7, 2011, a sealed indictment was returned against David Glen Shuck and Vincent Bret Watson, charging each with: one count of conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846; one count of manufacturing 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B)(vii); two counts of using and maintaining a place for the purpose of manufacturing marijuana in violation of 21 U.S.C. § 856(a)(1); and one count of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1).[1]  Dkt. # 2.  Counts one and two each carry a statutory minimum sentence of five years and a maximum sentence of 40 years.  Counts three and four each carry a statutory maximum sentence of 20 years.  Count five carries a statutory maximum sentence of five years.

Defendant was arrested on November 14, 2011, and his initial appearance and arraignment were held that day.  Dkt. # 8.  At the arraignment, Magistrate Judge Paul J. Cleary appointed Assistant Federal Public Defender Stephen J. Gruebel as counsel for defendant.  Id.  Greubel testified that he reviewed the indictment with defendant, explained the sentencing guidelines, and informed defendant of the minimum and maximum sentences that he faced as to each count of the indictment.  Dkt. # 112 at 18-19.  Greubel testified that he had no doubt in his mind that defendant knew that he was facing a statutory mandatory minimum sentence of five years.  Id. at 19-20.

On or about December 10 or 11, 2011, Greubel met with the Assistant United States Attorney assigned to this case.  Greubel testified that the government offered a plea agreement pursuant to which, if defendant were to plead guilty to count three, the government would dismiss the remaining charges.  Id. at 20-21.  Greubel relayed the offer to defendant the next day and informed defendant of his estimate that, if defendant pled guilty to count three, his sentence pursuant to the sentencing guidelines would likely be in the range of 24-30 months imprisonment.  Id. at 21.  Greubel also explained any potentially available departures and variances.  Id. at 22.  Defendant

---

[1] The case was unsealed on November 14, 2011.

rejected the offer and told Greubel that he did not want a felony conviction on his record because he could lose his license to sell insurance. Id. at 22-23.

On January 6, 2012, this Court held a pretrial conference at which both Greubel and defendant were present. At the outset of the conference, the Court asked Greubel if this case was definitely proceeding to trial, and he stated that it was. At the time of the pretrial conference, Shuck also intended to proceed to trial. However, on January 11, 2012, counsel for Shuck notified the Court that Shuck wanted to change his plea, and a change of plea hearing for Shuck was set for January 13, 2012. Dkt. # 31. Greubel testified that he was notified on January 9 or 10, 2012, of Shuck's intent to plead guilty and cooperate with the government and that, on January 11, 2012, he received a copy of the written report of Shuck's Rule 11 interview. Dkt. # 112 at 26. Upon learning that Shuck would be cooperating with the government, Greubel telephoned the Assistant United States Attorney and asked for the best offer currently available for defendant. Id. at 27. Greubel testified that this call took place sometime between January 9 and 11, 2012. Id. Greubel stated that he made this telephone call, in part, because he knew that the government's case against defendant would be strengthened by the testimony of Shuck. Id. During this telephone call, the government stated that it would make the same offer to defendant that it had previously made: if defendant pled guilty to count three, the government would drop the remaining charges. Id. However, the government stated that it would not offer the third point reduction for acceptance of responsibility because it had prepared for trial, which was scheduled for January 17, 2012. Id. The government further stated that the offer would remain open until the close of business on January 11, 2012. Id. at 28.

Greubel met with defendant in the office of the Federal Public Defender at 1:00 p.m. on January 11, 2012. Id. At that meeting, Greubel relayed the government's pending offer to defendant and instructed defendant that the offer would expire at the close of business that day. Id. Defendant told Greubel that he was not interested in taking the offer and wanted to go to trial. Id. Defendant also told Greubel that he had retained new counsel, W. Creekmore Wallace, II, to represent him for the upcoming trial. Id. Greubel then telephoned Wallace to discuss the case and Greubel informed Wallace of the government's latest offer and of defendant's rejection of that offer. Id. at 29. Greubel did not recall whether he telephoned the government to notify it of defendant's rejection, whether Wallace called the government, or whether the offer was simply allowed to lapse on its own. Id.

Wallace testified that he was first contacted on January 7 or 8, 2012, by Don Nelson, a friend of defendant and a district attorney in Creek County, Oklahoma, and was asked if he would be interested in representing defendant. Id. at 6-7. Wallace was told that defendant could pay him $10,000 to represent him at trial. Id. at 7-9. Wallace stated that he met with defendant prior to January 11, 2012. Id. at 9. Wallace further stated that, while he did look up the statutes under which defendant was charged and determined the possible sentences, he did not discuss potential sentences or plea negotiations with defendant. Id. at 10-12. Wallace does not recall whether Greubel or defendant, or both, told him of the most recent offer that had been made by the government, but Wallace understood that the offer had been rejected by the time he entered his appearance. Id. at 11. Wallace testified unequivocally that, during his representation of defendant, he was not aware of any "active" plea offers from the government. Id. at 15.

4

At 2:48 p.m. on January 11, 2012, Wallace filed an entry of appearance as counsel for defendant. Dkt. # 33. At 4:03 p.m. on January 11, 2012, Greubel filed a motion to withdraw as counsel. Dkt. # 34. The court granted the motion to withdraw at 9:01 a.m. on January 12, 2012, and Greubel was terminated as defendant's attorney at that time. Dkt. # 35. On January 12, 2012, at 11:00 a.m., this Court held a change of plea hearing at which Shuck pleaded guilty to all five counts of the indictment. During the plea colloquy, the Court advised Shuck of the statutory mandatory minimum and/or statutory maximum sentence for each count, including the mandatory minimum sentences of five years as to counts one and two. Defendant was present in the courtroom gallery during Shuck's change of plea colloquy. Dkt. # 112 at 19. Wallace was not present in the gallery with defendant, but Greubel was, despite having been allowed to withdraw as counsel. Id. at 12-13, 19.

On January 13, 2012, the Court granted the government's motion for a continuance of trial over the objection of defendant. Dkt. # 45. The trial was continued from January 17, 2012 to February 21, 2012. The trial was again continued, on motion of the government and without objection of defendant, to February 27, 2012. Dkt. # 48. The trial commenced on February 27, 2012 and ended on March 1, 2012, when the jury returned a verdict finding defendant guilty as to all five counts of the indictment.

On March 23, 2012, the Court received a handwritten letter from defendant requesting a "second chance at my plea bargin [sic] offer." Dkt. # 69 at 1. Defendant wrote that Greubel informed him of the offer, but that defendant "was under pressure due to the fact that prosecution was dropping offer the next day, I was unable to consult anyone else and could not give it full consideration." Id. Defendant's letter was forwarded to Wallace, defendant's counsel of record at

the time.  On March 29, 2012, Wallace filed a motion to withdraw as counsel and requested that the Court appoint substitute counsel for defendant.  Dkt. # 70.  Magistrate Judge Cleary held a hearing on Wallace's motion to withdraw, at the conclusion of which Magistrate Judge Cleary granted the motion and appointed Lance Hopkins, CJA counsel, for defendant.  Dkt. # 76.  On May 14, 2012, Hopkins filed the instant motion.  Dkt. # 103.

## II.

In order to establish ineffective assistance of counsel a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance."  Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also

Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

The Supreme Court recently decided two cases that specifically address the importance of effective assistance of counsel in plea negotiations. Lafler v. Cooper, 132 S. Ct. 1376 (2012); Missouri v. Frye, 132 S. Ct. 1399 (2012). In Lafler, the Court stated:

> Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. Frye, ante, at 1386-1387, 132 S. Ct. 1399; see also Padilla v . Kentucky, 559 U.S. ——, ——, 130 S. Ct. 1473, 1486, 176 L.Ed.2d 284 (2010); Hill, supra, at 57, 106 S. Ct. 366. During plea negotiations defendants are "entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

Lafler, 132 S. Ct. at 1384. Likewise, in Frye, the Court recognized that plea negotiations are a "critical stage" in the course of a criminal proceeding, in which effective assistance of counsel is required. Frye, 132 S. Ct. at 1405.

In Frye, the defendant claimed that his attorney was ineffective because he did not inform him of a plea offer and the offer expired. Frye, 132 S. Ct. at 1404. Frye later pled guilty without a plea agreement and was sentenced to a term of imprisonment longer than what he would have served had he accepted the un-communicated plea agreement. Id. In evaluating Frye's claim of ineffective assistance based on the un-communicated plea offer, the Supreme Court applied the two part test of Strickland. Under the first prong, the Court was faced with defining "the duty and responsibilities of defense counsel in the plea bargain process." Id. at 1408. The Court declined to establish an overall standard of conduct for all facets of plea negotiations, but rather specifically held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id.

7

Having established that Frye's counsel had been deficient, the Court turned to the second prong of the Strickland test and held that "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Frye, 132 S. Ct. at 1409. In addition, the Court stated that defendants must show a reasonable probability that the prosecution would not have withdrawn the offer and that the trial court would not have refused to accept it. Id. at 1410. Ultimately, the Court remanded the case for a finding of whether Frye could show that, if he accepted the earlier plea offer, "it would have been adhered to by the prosecution and accepted by the trial court." Id. at 1411.

In Lafler, the Court also applied Strickland to the defendant's claim of ineffective assistance of counsel during plea negotiations. Lafler rejected a plea offer based on incorrect advice that he received from counsel, and he was later convicted at trial. The government conceded that Lafler's counsel was deficient. Thus, there was no need for the Court to address the first prong of Strickland. Lafler, 132 S. Ct. at 1384. In applying the second prong of Strickland, the Court held that, similar to Frye, the "defendant must show the outcome of the plea process would have been different with competent advice." Id. The Court rejected the government's argument that a subsequent fair trial neutralized any prejudice caused by prior ineffective assistance. Id. at 1388. The Court held that defendant had shown that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." Id. at 1392. Thus, defendant satisfied the two prong Strickland test for ineffective assistance of counsel. Finally, the Court held that:

> The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed.

Id. Thus, in a situation where a defendant rejects a plea offer based on ineffective assistance of counsel and is then convicted at trial, the remedy is in effect a sentencing remedy, whereby the trial court has discretion to vacate some or all of the convictions and sentence accordingly.

### III.

Before applying these legal standards to the present case, the Court addresses the procedural posture. Defendant has characterized his motion as a "motion to vacate the jury verdict and for a new trial." However, as noted above, a new trial is not the remedy under Lafler.[2] Defendant's motion requests relief "pursuant to the recent United States Supreme Court decisions in *Missouri v. Frye* . . . and *Lafler v. Cooper* . . . ." Dkt. # 103 at 1. Because Lafler and Frye treat the remedy as a sentencing remedy, the Court will treat defendant's motion as a motion for sentencing relief under Lafler and Frye. The Court communicated this intention to the parties at the evidentiary hearing, and there were no objections. Dkt. # 112 at 4-5.

Defendant argues that "under recent United States Supreme Court precedent [Wallace's] overall performance was ineffective with respect to representation of the Defendant during the plea bargaining process and from the standpoint of advising Defendant of applicable law and the risks of going to trial instead of engaging in plea negotiations." Dkt. # 103 at 9. However, it is

---

[2] The Court notes that, if a new trial were an available remedy in this situation, defendant's motion would be untimely under both Fed. R. Crim. P. 29 and Fed. R. Crim. P. 33.

9

undisputed that Greubel advised defendant of both plea offers from the government, and explained to him his estimated guideline sentence pursuant to such a plea. It is further undisputed that defendant rejected both offers, the latter rejection occurring during a face-to-face meeting between plaintiff and Greubel while Greubel was still counsel of record and before Wallace had entered his appearance. Thus, it is undisputed that defendant's attorney informed him of all offers from the government and explained the offers to him competently. Defendant received effective assistance of counsel during the plea bargaining process.

Defendant's argument that Wallace was ineffective, because he failed to reinitiate plea discussions and reiterate statutory penalties and sentencing possibilities, is unavailing. The Supreme Court has noted that, in the context of plea agreements, one of the purposes of the Sixth Amendment right to counsel is to ensure that a defendant makes "a voluntary and intelligent decision to forsake constitutional rights." Padilla v. Kentucky, 130 S. Ct. 1473, 1493 (2010); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). Given the circumstances of this case, Wallace's failure to review sentencing possibilities and discuss plea options did not undermine defendant's ability to make a voluntary and intelligent decision regarding whether to plead guilty, because it is undisputed that defendant received effective assistance from Greubel and because it is undisputed that defendant advised both Greubel and Wallace that he refused to plead guilty to a felony and insisted on a jury trial. Dkt. # 112 at 15, 23. In addition, Wallace was retained less then a week before trial and was

explicitly told by Greubel that defendant had just rejected a favorable plea offer.[3] Defendant is essentially arguing that the effective assistance of prior counsel can be negated by subsequent counsel's failure to repeat every conversation that prior counsel has had with defendant and retroactively discuss every plea offer that had been rejected. Neither Strickland, nor Lafler/Frye, supports this argument. The Court finds that Wallace's failure to reinitiate plea discussions and reiterate statutory penalties and sentencing possibilities is not ineffective assistance of counsel under the facts of this case.

Defendant also argues that he had inadequate time to consider the government's second plea offer, and that he did not understand that he was facing a statutory minimum sentence of five years for counts one and two. Neither of these claims supports a finding of ineffective assistance of counsel. In his letter to the Court, defendant admits that Greubel told him about the government's second plea offer and its expiration at the end of the day, but that he "was unable to consult anyone else and could not give it full consideration" before the offer expired. Dkt. # 69 at 1. Defendant was informed of the offer by Greubel, his counsel of record, during a face-to-face meeting, at which time defendant rejected the offer. There is no evidence that defendant was confused by the offer or requested additional time to consider it. To the contrary, Greubel testified that defendant rejected the offer during the meeting. Frye held that a defendant has a right to be advised of a formal plea offer. Frye, 132 S. Ct. at 1408. There is no language in Frye to support the contention that

---

[3] It is understandable that Wallace did not reopen plea discussions with the government because Wallace testified that defendant's posture throughout Wallace's representation of defendant was that defendant "intended to go to trial and maintained he was innocent." Dkt. # 112 at 15.

11

defendant has a constitutional right to discuss a plea offer with multiple attorneys or a constitutional right to unilaterally extend the deadline of a plea offer.[4]

Similarly, defendant's contention that he did not understand that he was facing a statutory five year mandatory minimum sentence is unavailing. Greubel testified that he told defendant of the five year mandatory minimum and that there was no doubt in Greubel's mind that defendant understood. The Court finds Greubel's testimony credible. Defendant also attended Shuck's change of plea hearing, during which the Court advised Shuck of the minimum and maximum sentences applicable to each count. Even defendant's current counsel, Hopkins, admitted that he believed Greubel communicated the mandatory minimum sentence to defendant. Dkt. # 103 at 5. There is no evidence in the record that defendant did not understand the mandatory minimum sentence, but only counsel's conclusory assertion that something "was lost in translation" and that defendant "was not . . . aware that he was facing a five-year statutory minimum sentence." Id. The Court finds that the mandatory minimum sentence as to counts one and two was effectively communicated to defendant. Defendant cannot create an ineffective assistance of counsel claim by now arguing that he did not understand that communication. Not only would such a subjective standard result in every defendant claiming that he was given all relevant information and did not understand it, but there is simply no evidence in this case on which to base a finding that defendant, a licensed insurance agent, did not understand that he was facing a mandatory minimum sentence.

---

[4] Defendant suggests that any communications between Greubel and defendant on January 11, 2012 are irrelevant because by that time Wallace "had been hired" and it was "for all practical purposes, [Wallace's] case." Dkt. # 112 at 37. This argument is negated by the fact that Greubel was still counsel of record at the time of the plea offer advice and rejection, and that Wallace had not yet filed an entry of appearance.

Even if defendant had shown ineffective assistance of counsel, it is doubtful that he could have satisfied the second prong of the Strickland test. Under Lafler and Frye, in order to show prejudice, defendant must show that "the outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1384; see also Frye, 132 S. Ct. at 1409 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."). There is no evidence from which the Court could find that there was a reasonable probability that defendant would have accepted the plea offer. To the contrary, defendant repeatedly told Greubel that he would not plead guilty to a felony charge because he did not want to lose his insurance license. Dkt. # 112 at 23. This is supported by the undisputed trial testimony of co-defendant Shuck that defendant said that "he couldn't plead to a felony because he would lose his job and lose his place on the Creek County industrial authority committee." Dkt. # 79 at 94. Finally, defendant decided on the virtual eve of the originally scheduled trial to discharge his court-appointed counsel and pay $10,000 to Wallace to go to trial. This raises a strong inference that defendant intended to go to trial. Thus, it is unlikely that defendant could have shown prejudice under Strickland.[5]

**IT IS THEREFORE ORDERED** that defendant's Motion to Vacate Jury Verdict and Motion for a New Trial (Dkt. # 103) is **denied**.

**DATED** this 18th day of May, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] Further, it is doubtful that the undersigned could accept a guilty plea at this stage based upon defendant's trial testimony.