UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
vs.                                ) CASE NO. 11-CR-166-CVE
                                   )
DAVID GLEN SHUCK,                  )
                                   )
                Defendant.         )


TRANSCRIPT OF PROCEEDINGS
APRIL 12, 2012
BEFORE THE HONORABLE CLAIRE V. EAGAN, JUDGE PRESIDING

**SENTENCING HEARING**


A P P E A R A N C E S

FOR THE PLAINTIFF:                 MS. JOEL-LYN ALICIA McCORMICK
                                   Asst. United States Attorney
                                   110 West 7th Street, Suite 300
                                   Tulsa, OK 74119-1013

FOR THE DEFENDANT:                 MR. JAMES MICHAEL FATIGANTE
                                   Attorney at Law
                                   4815 S. Harvard Avenue
                                   Suite 426
                                   Tulsa, OK 74135

Transcript prepared by Greg Bloxom, RMR, CRR

U.S. District Court
Northern District of Oklahoma

PROCEEDINGS:

------------------------------------------------------------------

THE DEPUTY COURT CLERK:  Call case number 11-CR-166, United States of America vs. David Glen Shuck.

Counsel, make your appearance for the record.

MS. McCORMICK:  Joel-lyn McCormick on behalf of the United States.

THE COURT:  Thank you.

MR. FATIGANTE:  Good morning, Your Honor.  Jim Fatigante with Mr. Shuck.

THE COURT:  All right.  We're here today for sentencing.  Would you please come forward with Mr. Shuck.

All right.  Ms. McCormick, have you had timely receipt of the presentence report?

MS. McCORMICK:  Yes, Your Honor.

THE COURT:  Any objections, corrections, or changes?

MS. McCORMICK:  No, Your Honor.

THE COURT:  Mr. Shuck, have you had a chance to read the presentence report?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And, Mr. Fatigante, did you have timely receipt of that report?

MR. FATIGANTE:  Yes, Your Honor.

THE COURT:  And you have two objections to that report; is that correct?

MR. FATIGANTE:  Correct.

THE COURT:  Before we proceed, let me go ahead and rule on those objections.

For the record, the court notes that the defendant filed two objections, docket number 81, to the presentence investigation report dated April 6, 2012.  With regard to the first objection, the defendant objects to paragraph 20 of the presentence report as it provides a two-level enhancement for a dangerous weapon being possessed pursuant to United States Sentencing Guidelines Section 2D1.1(b)(1).

The court finds that, according to sentencing guideline section 2D1.1, commentary note 3, a two-level enhancement for possession of a firearm should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense.  The enhancement reflects the increased danger of violence when drug traffickers possess weapons.  Unlike enhancements for gun possession in other areas of the sentencing guidelines, the application standard for possession under this guideline has to do with possession by proximity, not actual possession, nor whether the weapon was possessed to facilitate a drug-trafficking crime.

In evaluating whether the application of United States Sentencing Guidelines Section 2D1.1(b)(1) is warranted, the defendant's relevant conduct, that is, all acts that were committed or willfully caused by the defendant must be

considered.  United States Sentencing Guidelines Section 1B1.3(a)(1)(A).

In order to establish weapon possession in the context of this guideline enhancement, proximity or evidence of a temporal and spacial relationship between the weapon, the drug-trafficking activity and the defendant must be established. United States vs. Pompey, 264 F.3d 1176, 1180 to 81, Tenth Circuit, 2001.

To support this proximity relationship, the government need only show the dangerous weapon was located in the general vicinity of where part of the drug activity occurred.  United States vs. Seanez, S-E-A-N-E-Z, 221 Federal Appendix, 773, 777, Tenth Circuit, 2007, unpublished, citing United States vs. Alexander, 292 F.3d, 1226, 1229, 1231, Tenth Circuit, 2001.

In United States vs. Flores, 149 F.3d 1272, Tenth Circuit, 1998, the court found that it is not necessary to show that illegal drugs and money changed hands near the weapon.  The weapon may simply serve as a potentially deadly means of protecting the trafficker's goods thereby increasing the danger of violence.

In this case, the seized loaded firearm was located in the defendant's residence and found in close proximity to items commonly associated with the manufacture of marijuana for sale.

Specifically, during a search warrant of Shuck's residence

in Sand Springs, Oklahoma, officers found a Remington Woodmaster 30-06 rifle loaded with five rounds of ammunition under the defendant's bed.  This is the same premise wherein a room was dedicated to drying marijuana and another room contained a large gun safe containing 26 bags of marijuana weighing approximately 3.11 kilograms, and $1,640 in currency. These facts are stronger than those in United States vs. Hall, 473 F.3d 1295, 1312 to 13, Tenth Circuit, 2007, where the circuit upheld application of the section 2D1.1 enhancement where a shotgun was found in a car outside a house in which drug paraphernalia with cocaine residue were found.

Further, the facts here are clearly different from the example provided in the sentencing guidelines manual where, for example, the enhancement should not apply if an unloaded hunting rifle was found in a closet.  As stated in Pompey, 264 F.3d, at 1181, once the government has satisfied its initial burden of showing possession, the burden shifts to defendant to show that it is clearly improbable the weapon was connected to the offense.

The defendant has failed to show that it was clearly improbable that the weapon found under the defendant's bed was connected with the offense.  Accordingly, this objection in docket number 81 is overruled.

With regard to the defendant's second objection, the defendant argues that the assessment of a criminal history

point at paragraph 34 for an expunged felony conviction is improper.  The court relies on the reasoning and rationale in United States vs. Hines, 133 F.3d, 1360, Tenth Circuit, 1998. In Hines, the court found that expunged convictions excluded from the criminal history calculation are those in which the defendant was subsequently found innocent or which involved legal error.  Those convictions are classified as expunged under the sentencing guidelines.  The court stated that convictions reversed or vacated for reasons related to constitutional invalidity, innocence, or errors of law are expunged for purposes of the guidelines and, therefore, cannot be used in the criminal history calculation.  See United States vs. Harris, 10 Fed. Appx. 682, Tenth Circuit, 2001, unpublished.  Expunged Oklahoma convictions properly considered in calculating criminal history because expungements were not based on innocence or legal error.

In the case before the court, the case was expunged after a year after his plea of guilty, not as a result of being acquitted for constitutional reasons or legal error; therefore, the prior case is a countable offense and one criminal history point was correctly applied.  The defendant's second objection in docket number 81 is overruled.

Subject to that ruling, Mr. Fatigante, do you have any other objections, corrections, or changes to the presentence report?

MR. FATIGANTE: No, Your Honor.

THE COURT: All right. The court accepts the presentence report and orders that it be placed in the record, under seal as to the portions not disclosed to defendant and counsel, and counsel will not be permitted access to the portions under seal.

As I have accepted the presentence report as my findings of fact, I will now make my findings with regard to the advisory guideline provisions.

Total offense level, 21; criminal history category, I; custody, Counts One through Five, 37 to 46 months; probation, not eligible; supervised release, Counts One and Two – at least four but not more than five years per count, Counts Three and Four – one to three years per count, Count Five – at least two but not more than three years per count; fine, $7,500 to $11,250,000; restitution, not applicable; special assessment, $100 per count.

Mr. Fatigante, do you know of anything inaccurate in those findings?

MR. FATIGANTE: No, Your Honor.

THE COURT: And do you, Ms. McCormick?

MS. McCORMICK: No, Your Honor.

THE COURT: I'll note for the record that I have received docket number 73 which is the government's motion for third-point reduction for acceptance of responsibility and, of

U.S. District Court
Northern District of Oklahoma

course, that is granted, and I'll note that the probation officer took the third point into account in calculating the total offense level.

Now, I do have sealed docket number 72 which is the government's motion; sealed docket number 74, which is the defendant's response to the government's motion; docket number 80, which is the defendant's motion for a variance; and docket number 78, which is the defendant's sentencing memorandum.

Subject to my ruling on those, do you know of any legal or factual issues in dispute?

MS. McCORMICK:  No, Your Honor.

THE COURT:  And do you, Mr. Fatigante?

MR. FATIGANTE:  No, Your Honor.

THE COURT:  All right.  So, as mentioned, I do have motions for departure and variance and I will take those and the 3553(a) factors into account to reach an appropriate and reasonable sentence in this case.  I have received a sentencing memorandum, as I mentioned, and I have not received any letters from family or friends but I have received a letter on behalf of Mr. Shuck from Quick Service Steel Company of Tulsa, from his employer, which is very complimentary and says that he has a job as long as he wishes.  Have you seen that letter?

MS. McCORMICK:  Yes, Your Honor.

THE COURT:  All right.  And I have reviewed that and taken that into account.

So, at this time, Mr. Fatigante, if you'd like to make remarks on behalf of Mr. Shuck, including anything additional you would like to say in support of your motion.

MR. FATIGANTE:  Yes, Your Honor.

The motion for variance and the response to the 5K are obviously trying to get him to the same place.  I think that the one thing I would want to highlight is that without his assistance I don't believe that Mr. Watson would have been convicted and I think that's something very important for the court to take into consideration.

THE COURT:  I will note for the record that his testimony was complete, accurate, credible, and very reliable.

MR. FATIGANTE:  I would agree.  And the issue that I pointed out in the response about his safety, I know, as defense attorneys, we can get up here and always say, well, if somebody goes to prison, there's a chance of retribution, but in this case it definitely exceeds the norm, based on the spray painting that was done just after Mr. Watson found out that Mr. Shuck would be testifying against him.  Knowing Mr. Watson's background, I think that that's a real and credible threat.

THE COURT:  Has anything happened since that date in February?

MR. FATIGANTE:  His employer received a phone call regarding Mr. Shuck about the case but it was not -- it was not

threatening, per se, so --

THE COURT:  It was just trying to cause him financial harm by letting him know about the case?

MR. FATIGANTE:  That's our guess.  We, of course, don't know who that was.  But in this case I think that the additional levels would be appropriate just based on that. It's my understanding that this court earlier this week granted a nine-level reduction for somebody whose positioning in that case was far less important than Mr. Shuck's in this case, so I think that in that regard the additional levels wouldn't be offensive.

But other than that, all I'd like to say in his behalf is he knows what he had been doing for years is wrong.  He has had the proverbial complete turnaround regarding he had very heavy drug use and now he doesn't, his employment has been impeccable, and now he's married.  So, truly for reasons that things have changed, that he was such an integral part of the conviction of Mr. Watson, and that the longer he's in the Bureau of Prisons the more likely he is to be harmed, I would ask that the court sentence him, as I prayed for, under zone B.

I think that he will still be in peril.  I think his family will be in peril even if he's out.  But I think he has a much better chance of defending himself if he's not within the Bureau of Prisons for an extended period.

Other than that, I don't have anything else, Your Honor.

THE COURT:  Thank you.

Mr. Shuck, would you like to make remarks on your own behalf?

THE DEFENDANT:  Yes, I would, Your Honor.

I would first like to apologize for being here, and I know you all have better things to do than to prosecute a guy that made a huge mistake by growing marijuana.  I'd like to say I'm sorry.  I'm very remorseful.  I did smoke marijuana for probably, I don't know, since I was 20 until I guess I was 48, so 28 years.  There for six years, whenever I was growing it, I smoked it way too much, at least an ounce a week.  I don't smoke it any more.  It's caused me and my family sleepless nights and just, you know, and I'm responsible for it all.  I just made the wrong -- did the wrong thing.  It's not the first wrong thing I've ever done in my life but maybe one of the biggest.

I do accept responsibility for, you know, what you're going to hand me in prison, the length of prison.  I promise you I'll never see you again unless I'm just walking by, or if you have a flat tire I'll stop and help you.  I can't think of anything else to say that, you know, is going to change your mind.  I just know that, you know, I know I did wrong and I just want to apologize for everything I've done.

THE COURT:  I do want to state for the record that I certainly commend you for the wise decision you made after you

were charged.  I know it wasn't easy to testify, and I think that your testimony was a very important factor in the conviction of Mr. Watson and I know it was difficult and you put yourself at risk.

THE DEFENDANT:  And I know that the risk is real.  I know Vince better than anybody else does here at the court and I know of past retaliations he's done against other people too, and I expect it and just hopefully I'll see it coming and I'll be able to do a little bit about it whenever it does happen because it will, I know.  But that's a choice I made.  I would rather get beat up or have a couple of black eyes than not do the right thing.

THE COURT:  Thank you very much.

THE DEFENDANT:  And I know I've done the right thing here.

THE COURT:  Ms. McCormick, I would like to hear a little bit more about where the government is.  Of course, I'm going to grant your motion.  You have a little bit of a mathematical error in there.

MS. McCORMICK:  I apologize, Your Honor.

THE COURT:  But I mean based upon his -- he's a 21 and you recommended six, so that gets him to a 15.

MS. McCORMICK:  Yes, Your Honor.

THE COURT:  So it's actually 18 to -- 18 to 24 months.

MS. McCORMICK:  Well, Your Honor, with the departure

guideline range, I believe that puts Mr. Shuck in an area where we balance both the assistance that he's provided against the culpability. The court had the opportunity to hear the extensive testimony and to fully appreciate just how elaborate the operation was.

I fully believe and appreciate that Mr. Shuck is remorseful. I believe that. However, he references in his statement that he's smoked marijuana for a number of years. This case isn't about marijuana use. It's about the distribution of marijuana, and Mr. Shuck and Mr. Watson distributed a lot of marijuana, and so it places the government, when making its recommendation, in the position of balancing what we would consider a rather elaborate operation against the assistance that was provided.

I agree that Mr. Shuck strengthened the government's case and made it possible for us to obtain a conviction on Mr. Watson and that's the basis, in part, that's the basis of our recommendation.

We also take into account the risk that one takes when someone like Mr. Shuck not just provides assistance but stands up in open court and swears to tell the truth and tells a full, complete with no-holds-barred story. Mr. Shuck did that. We've taken that into consideration.

In reference to safety concerns, as we would always do when there are multiple defendants who would perhaps be placed with

the Bureau of Prisons, we'll address those safety concerns. But to depart any further would certainly minimize the nature and extent of the criminal activity that was carried out here. We stand on our sealed motion and ask the court to sentence Mr. Shuck within that departure guideline range.

THE COURT:  And I just want to note for the record, because it was referenced in an earlier sentencing that I had, of course, departures and variances are dealt with under both the guidelines and 3553(a) as well as on a case-by-case basis based upon the criminal conduct that occurred, and I too am trying to balance the incredible effort that Mr. Shuck made to assist the government with the fact that at least the second round of cultivation and sale lasted at least six years, and so it was an extensive history which is dissimilar from the person that I sentenced earlier this week.  So I just wanted to make that note.

So I'll now state the sentence and then I'll ask counsel if there's any legal reason why the sentence cannot be imposed as stated.

The court has reviewed the government's motion for downward departure, sealed docket number 72.  The court has also reviewed the defendant's response to the government's motion for downward departure, sealed docket number 73, wherein the defendant requests an additional four-level departure pursuant to United States Sentencing Guidelines Section 5K1.1.

Based upon the information contained in the government's motion, the court finds that a six-level downward departure is justified and appropriate as a result of the defendant's substantial assistance.  Based on a six-level departure, the defendant's total offense level is 15, and, combined with a criminal history category of I, the resulting departure guideline range for imprisonment is 18 to 24 months.  Sealed docket number 72 is granted.  The defendant's request for an additional four-level departure, sealed docket number 73, is denied.

Additionally, the court notes for the record on April 5th, 2012, the defendant filed a sentencing memorandum, docket number 78, wherein the defendant requests that the court not impose a fine in this case and requests that the court recommend to the Bureau of Prisons that the defendant be designated to a facility as close to Tulsa, Oklahoma as possible and be allowed to self-surrender for his sentence.

Further, the court has also reviewed the defendant's motion for a variance filed on April 6, 2012, docket number 80, wherein the defendant requests a 10-level reduction in his total offense level to a total offense level of 11, combined with a criminal history category of I, and the resulting variance guideline range of imprisonment would be eight to 14 months in zone B of the sentencing table.  He further requests a sentence pursuant to sentencing guidelines section

5C1.1(c)(2) of one month imprisonment followed by 13 months of home detention.  The defendant contends that the requested sentence is reasonable and sufficiently meets the objectives of sentencing.  This request is based on the following 3553(a) factors:  The defendant is 49 years old; is married to Lina Copeland; they live with Lina's mother; he is no longer a drug user; and his involvement in the instant offenses were a result of his previous use of marijuana.

He further contends that the requested sentence would provide just punishment for the offenses committed, would adequately deter future crimes, as well as protect the public from further crimes, and not create an unwarranted disparity with other defendants in similar circumstances.

The court has considered these factors and finds that there are no factors present that separate this defendant from the mine run of similarly situated defendants in similar cases. The court has granted a significant downward departure based on the defendant's substantial assistance to the government and finds no reason to grant an additional variance from the departure guideline range.  Accordingly, the defendant's motion for a variance, docket number 80, is denied.

The court recognizes that the United States Sentencing Guidelines are advisory and not mandatory but has considered the sentencing guidelines along with all the factors set forth in 18, U.S.C., Section 3553(a) to reach an appropriate and

reasonable sentence in this case.

In determining an appropriate sentence, the court has considered the nature of the offenses and the defendant's criminal history.

In this case, the defendant and others conspired together to manufacture 100 or more marijuana plants with the intent to distribute, and maintained two separate premises for purposes of manufacturing the marijuana.

The court has considered the need for this sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide for just punishment.  Based on the defendant's criminal history, personal characteristics, and his substantial assistance to the government, a sentence at the low end of the departure guideline range will serve as a deterrent to this defendant and others and protect the public.  A term of supervised release is statutorily required as to Counts One, Two and Five and will allow the defendant time to adequately readjust to the community upon his release from imprisonment. The terms of supervised release shall include special conditions based on the nature of the offenses and the characteristics of the defendant.

Finally, the sentence imposed avoids unwarranted sentencing disparities among defendants with similar criminal records who have been found guilty of similar conduct.  Restitution is not a factor.

It is the order and judgment of the court that the defendant, David Glen Shuck, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 18 months as to each of Counts One, Two, Three, Four, and Five of the indictment.  Said terms of imprisonment shall run concurrently each with the other.  Additionally, the court recommends that the defendant be incarcerated as close to Tulsa, Oklahoma as possible.

The court orders that the agreed forfeiture money judgment in the amount of $300,000 and preliminary order of forfeiture of substitute property entered against the defendant, docket number 68, filed on March 5, 2012, is hereby incorporated into the judgment by reference.

Based on the defendant's financial profile as outlined in the presentence report, the court finds that the defendant does not have the ability to pay a fine; therefore, no fine is imposed.

Upon release from imprisonment, the defendant shall be placed on a term of supervised release for a period of five years as to Counts One and Two, and three years as to Counts Three, Four and Five.  Said terms of supervised release shall run concurrently each with the other.

Should the terms of supervised release be revoked, an additional term of imprisonment of up to three years could be imposed as to each of Counts One through Four, and up to two

years as to Count Five at each revocation.

Immediately upon release from confinement but in no event later than 72 hours the defendant shall report in person to the probation office in the district to which the defendant is released.  While on supervised release, the defendant shall not commit another federal, state, or local crime.  The defendant is prohibited from possessing a firearm, ammunition, destructive device, or other dangerous weapon.

The defendant shall, at the direction of the U.S. Probation Officer, cooperate with and submit to the collection of a DNA sample for submission to the combined DNA index system.

Further, the defendant shall not unlawfully use or possess a controlled substance.  The defendant shall submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests within 120 days for use of a controlled substance.

The defendant shall comply with the standard conditions that have been adopted by this court and shall comply with the following additional special conditions:

1.  The defendant shall abide by the special search and seizure condition;

2.  The special substance abuse and testing condition is imposed.

It is further ordered that a $100 special monetary assessment per count for a total of $500 be paid immediately to

the United States Court Clerk for the Northern District of Oklahoma.

Ms. McCormick, do you know of any legal reason why the sentence cannot be imposed as stated?

MS. McCORMICK:  No, Your Honor.

THE COURT:  And do you, Mr. Fatigante?

MR. FATIGANTE:  No, Your Honor.

THE COURT:  All right.  The court orders that the sentence be imposed as stated.

Mr. Shuck, first, I have a duty to advise you that, subject to your waiver of appellate and post-conviction rights that was contained in your written plea agreement, you may have a right to appeal the sentence that has been imposed.  Do you understand that any notice of appeal must be filed within 14 days of the judgment?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you also understand that if you wish to appeal and you cannot afford an appeal, there are forms in the clerk's office where you can apply to appeal informa pauperis?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  There are no counts to dismiss here.  Any reason why the defendant cannot self-surrender?

MS. McCORMICK:  No, Your Honor.

THE COURT:  All right.  The court finds that the defendant is a suitable candidate for voluntary self-surrender

and the defendant shall surrender to the designated facility before 12 noon on May 24th, 2012.

And do you want to give him a card?

Now, Mr. Shuck, you're going to be notified of your facility and so you're going to have to make arrangements to get there by noon on May 24th, 2012.

THE DEFENDANT:  Thank you.

THE COURT:  If you have any difficulties, let Mr. Fatigante know.

THE DEFENDANT:  I'll get there.

THE COURT:  Okay.  I know.  You know that failure to show up on that date and time would be a problem?

THE DEFENDANT:  Yeah.

THE COURT:  And I do believe --

THE DEFENDANT:  And thank you for not --

THE COURT:  -- I'll never see you in court again.

THE DEFENDANT:  You will not.

THE COURT:  And congratulations on cessation of the use of marijuana, and good luck.

THE DEFENDANT:  Thank you.

THE COURT:  All right.  I certainly hope that nothing happens with Mr. Watson, but I'll leave it to Ms. McCormick to make sure the Bureau of Prisons is notified that he cannot be anywhere near Mr. Watson.  Mr. Watson is not going to be sentenced until June, I think, but we'll make sure it's not the

same location.  Okay?

MR. FATIGANTE:  Thank you.

THE COURT:  All right.  Good luck, Mr. Shuck.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  We'll be in recess.

(PROCEEDINGS CLOSED)

## REPORTER'S CERTIFICATION

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


CERTIFIED:    *s/Greg Bloxom*
              Greg Bloxom, RMR, CRR
              United States Court Reporter
              333 W. 4th Street, RM 4-548
              Tulsa, OK 74103
              (918)699-4878
              greg_bloxom@oknd.uscourts.gov